of Alaska. Counsel for the appellant? I'd like to allocate my time five and five, if that'd be okay, Your Honor. It's entirely your control. Just watch the clock. Thank you. This is an appeal of a summary judgment on behalf of the defendant ruling, and I'd like to focus first off on the statement of the trial court that plaintiff has produced no evidence that the can prevented plaintiff from landing on the property of the defendant. The defendant has no evidence that the can prevented the defendant from landing on the property of the defendant. The defendant has no evidence that the can prevented the defendant from landing squarely as he asserts, which is very important, and I'd just like to direct to the court, to the testimony of the plaintiff that was cited on page eight of my brief, where the plaintiff testified, my left foot hit the deck and it twisted because I was, you know, I didn't plant it right inside the garbage can. I planted it next to the garbage can. Could you skip the excerpt, please? That's R25, Exhibit 1, belled up, page 78. That's page eight of your excerpts of record. I just want to read along with you. R25, Excerpt 1. I'm not sure what page it was in the appendix. I'm sorry, Your Honor. But it was page seven. Counsel, are we talking Jones Act negligence or Admiralty unseaworthiness? Well, both. According to the Fleming case, which was – There are two separate analyses, right? That's correct, Your Honor. The failure to provide an unobstructed pathway can give rise to unseaworthiness, and it can give rise to Jones Act negligence. And here you had a garbage can that obstructed one-third of the passageway at the bottom of the stairway along the side where the handrail went. And I think that under the Fleming case that a crew member is entitled to a reasonably safe place to regain his footing if he loses his footing. The Fleming case was an FVLA case, which was very similar to this case insofar as the plaintiff lost his footing climbing a ladder on a rail car through no fault of the employer, but the roadbed where he tried to regain his footing was defective. And the Court held that even though he lost his footing under ordinary conditions, the failure to have a safe roadbed to regain his footing was a species of negligence. It's the same thing here. And I think the case is controlled by the Fleming case. And also the safe place to work doctrine, I've always viewed the Ragsdale decision of this Court as being the number one decision on the safe place to work doctrine insofar as the safe place to work doctrine is broader than the general duty to exercise reasonable care and all facets of the employment relationship or the task at hand are viewed in making that determination. And here you had multiple factors that demonstrate the failure to provide a safe place to work. You had a swaying vessel. You had rounded edges of the stairway. You had, because of the swaying vessel, the plaintiff lost his footing when stepping down. I'm with you on the can. I have a little difficulty seeing where there is evidence in the record that would show that there was any deficient condition with the stairs themselves. I'm not saying that the stairs themselves. Or with swaying of the vessel, because that's obvious. I'm not saying that that's deficient either. So if we put those things aside, I mean, which is what you were starting to go down this litany. Right. I'm just saying all of these factors taken into account. I'll take you on something relating to what Judge Reimer asked. And the problem with the stairway is he's got a banister on the left side, no banister on the right side. So if he trips, he's got nothing to grab with his right hand. Is that right? The main problem with the stairway is the passageway at the bottom of the stairway adjacent to the banister was obstructed. Does it matter then? In the safe place to work doctrine, the entire context of the situation, it matters. Hold on. Stick with me a minute. Sure. I want to do one thing at a time. Does the banister matter? Insofar as there was no banister on the right side, it matters. Now, did he have his right hand free so that he could have grabbed the banister if one was there? Yes, he did. He wouldn't carry anything in his right hand. That's correct. I think the captain said that the custom is one hand for the sailor, one hand for the ship. So they don't need a banister because ordinarily he'd be carrying something. Is that the idea? Ordinarily they would be carrying something. But this fellow wasn't carrying anything. Correct. But the condition of the stairway made it impossible for him to adhere to that maxim, one hand for the ship, because he had to let go of the left-handed banister when the garbage can was obstructing his descent and he had to lunge and try to reach for something else to hold on to on the other side. There was nothing for him to hold on to when he lost his first fold. I'm sorry? That's the garbage can's fold. That's correct. Okay. So back to the handrail issue. What evidence is there in the record that the lack of a handrail on the right-hand side was actionably deficient under either theory? Standing alone, I'm not arguing that it was deficient. I'm sorry? In and of itself, I'm not arguing that it was deficient. Okay. So we can say the handrail by in and of itself was not, is not, you're not proceeding on it. Correct. Other than taking as a whole under the entire context of the situation under the Safe Place to Work document, where all these things. Well, if you take it all in context, that means you're saying the boat was slimming and all those things? Correct. And where is there evidence in the record that even all those things, the fact that a boat obviously is moving, and nobody has said that there was anything wrong with the ladder. So how even adding everything up do you get a problem if you include the handrail and don't rest entirely on the garbage can? In and of itself, we're not complaining about there not being a handrail on either side. It's all focused on the right. So your position is there's a genuine issue of material fact which would have precluded summary judgment? Is that the guts? That's exactly our position. The question is on foot. And I'm hearing you now say it's a genuine issue of fact on the garbage can, something with which I agree, by the way. Correct. But you're saying that it doesn't exist with respect to anything else. The Safe Place to Work doctrine, which takes in all things into consideration, which is broader than the duty of exercise of reasonable care, but the primary focus is the garbage can being there. And there was evidence that it prevented the plaintiff from landing squarely on the deck. Counsel, you desired to save some time. You're down to 2.37. I'll save it. Very good. Thank you. We'll hear from the company. Mr. Barkett. Good morning, Your Honor. Yes, Mike Barkott for FCA. To me, this case absolutely demonstrates the wisdom of the Solitex decision and the utility of that decision. How can you possibly say that there's not a tribal issue of fact on account of the garbage can? I mean, the parties dispute where it was. If the captain is right that it was over in a corner, then there was no obstruction in U.N. If Bell is right that it obscured a third of a 24-inch-wide stairwell, then you've got a problem. I heard your comment in response to Mr. O'Brien's responses, and I'd like to try and talk you out of that position. Well, I'm asking. Thank you. But I'm thinking of you rather squarely about this. You know, it seems to me that in this oral argument, we are now down to that fine razor's edge, and I'd like to address that specifically. The problem with the garbage can below is that it is clear that Mr. Bell was coming down these stairs. He was on his way down. He didn't let go of the handrail, by the way. And if you look at excerpt of record, page 32, lines 15 or, excuse me, 13, it matters just the time you spend. The question I tried to focus on, which is there is an issue of fact on nothing else as to where the garbage can was. Right. And if there were a garbage can across a third of a 24-inch-wide stairwell, why doesn't that require trial? Because we all learned in law school that a tort has elements. It has duty, breach of duty. And the questions Your Honor is asking go to duty of breach of duty and cause and proximate cause. Well, look, I mean, I would do. I don't. I just want that one question. And I'm going right there, Your Honor. I'm going right there. That doesn't have anything to do with tort law, which I've forgotten. Oh, it does. And the reason it does is Mr. Bell was on his way down the stairs before the garbage can ever came into play. Counsel, I don't know why you're dodging Judge Reimer's question on the garbage can. It seems important to me, too. I mean, we've all ñ tripping as you go down the stairs is not a rare thing that only happens to sailors. It happens to everybody from time to time. And if you're going down the stairs and there's something at the bottom of the garbage can, whether it's a garbage can or whether it's your dog or cat or whether it's a package, you tend to try to avoid it if you feel like you're going to fall. And I ñ you kind of care is there something on the right for him to grab. Yes. And is there a garbage can in the way, so he's going to try to dodge around it. Well, whether there's a garbage can. I can't get an answer. I'm doing my best. If I could finish my thought, I think we're on exactly the same point. Yes, there was something to grab. This is at the back of the blue brief. There's a vertical pole to grab. So he could have made a grab at that. But what there is not in this record, the reason there is not a triable issue, is one word of medical evidence that this injury was enhanced. That's really unpersuasive. I mean, the trial judge thought you need an expert witness to create a genuine issue of fact, but everybody who's tried PI cases knows you don't. It may or may not strengthen a case. This is a medical issue, Your Honor. This is a medical issue. Why did I fall? That's not something you study in med school. Mr. Bell was on his way down the stairs. He was going to hit the bottom, garbage can or not. The question is, did the garbage can make his injury any worse by one degree? And there's not a word in the record, medical record. Why would we need it? Because damages are part of a claim. Tripping as you go down the stairs is such a common experience. That's right. And usually between landing square and landing at an angle when you're trying to dodge something, it's also a common experience. He was coming down with his feet on about the fourth or fifth stair up. He was on his way down. He was going to hit the bottom. Let's come back to the question I started with. You've got 24 inches. That's about that much. Yes. I don't know about you. I'm fairly narrow. I'm a little wider, I'm sure. I sort of put down a little marker on the floor. And I have a lot of trouble getting by something without falling that obscured a third of 24 inches. That leaves about that much. So if you are falling, why isn't there a triable issue of fact raised with respect to whether your fall wasn't affected in some way by the presence of an obstruction of that order of magnitude? My belief and Judge Martinez's belief was that it would require medical evidence to show that the damages from the fall that was already taking place were in some way enhanced by that. Obviously, that is not an argument that's very appealing to the panel. So let me talk about another argument. Let me ask you, put it another way. Is there some indication that the garbage can could be excluded as a matter of law from any causation in this case? And that is precisely where I was going, Your Honor. Your Honor, in order for there to be a breach of the duty of care, the accident has to be foreseeable. And the evidence in this trial record was that there were in excess of a million passages down this stair without a fall, without a slip, because sailors do have one hand for the boat. Absent foreseeability, another element of the claim that must be met, and there was no evidence of foreseeability, the garbage can is taken out of this claim. You're saying there was no – if the garbage can was there, I understand there's an issue of fact about whether it was there at all. Yes. But if it was there, I don't see why the first accident can't recover, because no one would have imagined there was an accident, which is basically your argument. That is the argument on foreseeability? I had a rug in front of my chamber store that was all curled up, never lost a curl. I used to trip over it every time, but I never hurt myself, never fell. It was obvious to me that sooner or later somebody would, so I got rid of the rug. And the garbage can like that. Because of your tripping, Your Honor, you were on notice that that was a dangerous condition. There have been a million passages down this stairway, and no one was on notice that anyone might – They've got to go down the bottom of the stairway like they're crossing a wide board. Only 18 inches there. Well, it also may be because the garbage can wasn't an obstruction, which may be true. But we don't see that. That's a fact question, of course. And I come back to cause, which I think – I've gotten every indication that this is falling on deaf ears. What the district court actually said was he landed on the deck on his left foot and at no time contacted the garbage can. Right. This testimony belies his claim that the presence of the garbage caused his injury or contributed to it. I don't see where that has to do, A, with damages or, B, with anything other than the fact that he didn't contact the garbage can. But so what if the garbage can caused him to skew his landing? And his damages, because he skewed the landing, which were different than the no-garbage-can scenario, were blank. That's the blank that is missing in this record. Would he get a jury trial, incidentally, if it goes back? It's been tried. He did not request a jury. I'm sorry. Actually, Your Honor, I'm not sure. It's the plaintiff's choice. In this case, I don't frankly recall, but I believe this was a bench trial. Mr. O'Brien probably has the answer to that off the top of his head. This was a summary judgment. This was a summary judgment, yes. He did not request a jury trial. Pardon? You're saying he did not request a jury trial. I can't recall on this record whether he requested a jury trial or not. We'll ask Mr. O'Brien about that. I'd be delighted to answer any other questions. Thank you. Thank you, counsel. Mr. O'Brien, do you have some reserve time? Yes. The defendant has argued that it's not foreseeable that someone could fall down the stairs. I think that it's easily foreseeable. And the defendant doesn't have to foresee the exact mechanism of injury. And the one million prior descents down the stairs was something that an expert testified who could hardly have any personal knowledge of something like that. Would you mind answering the question that we heard raised? And that is, did plaintiff ask for jury trial or not? It's a bench trial. Bench trial. Okay. Thank you. All right. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Rymer, Kleinfeld